UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No. 0:08-608-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| GERARD ONEIL WELLS | ) | |
| _____ | ) | |

This matter is before the court on defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 306). He contends that a medical affliction from which he suffers, specifically asthma, when combined with the ongoing COVID-19 pandemic, presents a substantial risk of harm justifying his immediate release.

The government has responded in opposition and contends that the defendant has not met his burden in showing that there are "extraordinary and compelling reasons" for a sentence reduction (ECF Nos. 309, 334). Alternatively, the government suggests that the defendant's motion should be denied because he has failed to demonstrate that he is not a danger to the community or that he otherwise merits release under the factors of 18 U.S.C. § 3553(a).

The defendant has replied to the government's memoranda in opposition.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. If the defendant's

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

medical condition were the only issue presented in this case, this court would be inclined to deny the defendant's motion. But, for reasons which will be seen, the court has determined that this case is one deserving of an order directing the defendant's immediate release from custody.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin,* 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of

2

Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for

3

release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also*, *Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the

court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf.  The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).  *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government concedes that the defendant has properly exhausted his administrative remedies.  Thus, the court will proceed to review the matter on the merits.

DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release.  However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release.  If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard.  As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate

release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Medical Condition*

The defendant contends that he suffers from asthma. The government states that the defendant's claim of asthma is not supported by a specific medical diagnosis and the defendant has not offered proof of such a diagnosis. The government also notes that the defendant has declined to receive the Pfizer COVID-19 vaccine. The government argues that the defendant's medical ailment is well-controlled and does not present any impediment to his ability to provide self-care in the institution.

It bears mention that the Presentence Report (PSR) prepared in connection with the resentencing in 2013, indicated that the defendant was in "good physical health" at the time. (ECF No. 201 at ¶ 56). The PSR also indicated that the defendant did not see a physician on a regular basis, nor did he take any prescribed medications. It thus appears that the defendant's asthma is a condition that has arisen since his incarceration.

After careful consideration, it is this court's determination that the defendant has not shown an extraordinary and compelling reason for a sentence reduction based on his medical

ailments.

However, there is an even more important consideration which the defendant does not assert in his motion, but the court has decided to raise *sua sponte*. That is, as a result of the changes brought about by the First Step Act and related case law, the defendant's sentence would be substantially lower today than when he was originally sentenced in 2011, and resentenced in 2013.

*The Defendant's Original Sentence and*
*Subsequent Resentencing*

The defendant is one of two defendants named in a 7-Count Superseding Indictment on April 21, 2010. The defendant was involved in a conspiracy to distribute multi-ounce quantities of crack cocaine in the Lancaster and Chester areas of South Carolina. He was ultimately held accountable for 214.48 grams of crack cocaine and 14 grams of cocaine.

The defendant pleaded guilty pursuant to a written amended Plea Agreement (ECF No. 118) to the following charges:

Count 5: Using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and

Count 6: Conspiracy to possess with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 and 851.

The government filed an Information (ECF No. 23) pursuant to 21 U.S.C. § 851, which triggered a mandatory minimum sentence on the drug offense in Count 6. At that time, 21 U.S.C. § 841(b)(1)(A) provided for a 15-year mandatory minimum sentence if a

defendant had a prior conviction for a "felony drug offense."

The original Presentence Report (PSR) (ECF No. 142) (prepared in November 2010) determined the defendant's total offense level to be 27 with a criminal history category of I. Absent the mandatory minimum sentence of 180 months imprisonment on Count 6, the guideline range would have been 70 to 87 months on Count 6. As to Count 5, the mandatory minimum sentence was 60 months, to run consecutive to the sentence on Count 6.

On December 19, 2010, this court sentenced the defendant to 240 months, consisting of 180 months on Count 6, and 60 months consecutive on Count 5. Both of these sentences were mandatory minimum sentences required by statute.

In January 2013, the government filed a memorandum acknowledging that the Fair Sentencing act of 2010 ("FSA"), Pub.L.No. 111-220, 124 Stat. 2372 (Aug. 3, 2010) was not applied to the defendant's original sentence. The government conceded that in light of *Dorsey v. United States*, 132 S. Ct. 2321 (2012), the defendant should have been sentenced pursuant to the FSA because he was sentenced *after* the effective date of the FSA.

This court held a re-sentencing hearing on April 8, 2013. An amended PSR was prepared (ECF No. 201) which determined a new, lower mandatory minimum sentence of 120 months on Count 6. Along with the 60-month consecutive sentence on Count 5, the defendant's new sentence was reduced from 240 months to 180 months. Once again, these sentences were mandatory minimum sentences driven by the applicable statute in place at the

time the defendant was resentenced on April 10, 2013.[2]

At the time of the defendant's resentencing (April 10, 2013), there was only one conviction that triggered the § 851 enhancement: a June 5, 2006 conviction for possession of cocaine, first offense, for which the defendant received a sentence of 6 months suspended on 2 years' probation.   The defendant's criminal history category remained at I.

Under the current law, in order to trigger the increased mandatory minimum sentence under § 841(b)(1)(A), a defendant must have a prior conviction for a "serious drug felony." In order to qualify as a "serious drug felony," the defendant must have served a term of imprisonment of more than 12 months for the prior offense.

Here, the defendant's 2006 conviction resulted in a 6-month sentence suspended on 2 years' probation, so that is does not now meet the "12 month" requirement to be a serious drug felony.   Thus, if sentenced today, the defendant would no longer be subject to the mandatory minimum provision of § 841.

And, as the 2013 PSR indicates, without the mandatory minimum required by statute, the defendant's Guideline range would have been 70 to 80 months on Count 6, rather than

---

[2] The defendant filed an appeal of his amended judgment and conviction (No. 13-4309). The Fourth Circuit Court of Appeals dismissed the appeal on May 2, 2014.   The defendant also filed a motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255.  This court found no merit in the defendant's claims of ineffective assistance of counsel and denied the motion.  The defendant's appeal of that decision on his § 2255 motion was also dismissed by the Fourth Circuit. Then, in 2019, the defendant filed another § 2255 based on the Supreme Court's decision in *Johnson v. United States*, 135 S.Ct. 2551 (2015).  This court denied the *Johnson* motion finding that the defendant's prior conviction had not been expunged, and that it remained in existence for criminal history purposes, and also as a valid enhancement under § 841.

180 months. There was no change to the 60-month sentence on Count 5 that was to run consecutive to the charge in Count 6.

In *United States v. McCoy*, the Fourth Circuit Court of Appeals authorized district courts, when reviewing motions for compassionate release, to consider whether significant changes in sentencing law could constitute extraordinary and compelling reasons for a defendant's release. In applying the *McCoy* standard, this court is required to determine whether the sentence the defendant would receive today is significantly different from the sentence originally imposed. This case presents one of those rare situations that falls under the *McCoy* rationale.

In addition to the disparity between potential sentences, there are other factors that merit consideration in granting the defendant's motion. First, the defendant was sentenced in December 2010 and he has served a large portion of his 180-month sentence. He is currently scheduled to be released in October 2023 and is housed at the Estill FCI prison camp. His custody level within the BOP has been labeled "community," indicating that the BOP considers the defendant not a threat to others in the community.

While incarcerated, the defendant has had one disciplinary infraction on his record, and he has accumulated a total of 45 educational and vocational course credits.

Additionally, the defendant has furnished this court with three letters of recommendation authored by prison officials who unanimously agree that the defendant is a model inmate. Mr. B. Bryant, a landscape supervisor with the BOP, writes that the

10

defendant "has shown great self improvement, has been a mentor to other young offenders, and has influenced and facilitated positive changes in their lives." Mr. Bryant concludes that the defendant "has been rehabilitated and is well-prepared for his return to society upon his release." Mr. G. Robinson, a food service supervisor, writes a similar letter pointing to the numerous vocational and education courses the defendant has participated in. Mr. Robinson points to the defendant's "great leadership skills, great sense of humor, and great personality." He also notes that the defendant mentors young offenders and shows respect to the staff and his peers.

Mr. M. Gary, a maintenance foreman, reports that he has been employed by the BOP for approximately 20 years and has supervised thousands of inmates on various work details. He says, "During my 20 years I developed a unique skill set that helps me better which inmates are more likely to have success upon exiting the prison system. Mr. Wells fits that category exceptionally well." Mr. Gary adds, "There is no doubt in my professional opinion that Mr. Wells has been rehabilitated and would be an asset to any organization that hired him."

In sum, the circumstances presented in the instant case draw significant parallels to those offenders granted compassionate release in *McCoy*. Specifically, in *McCoy*, when conducting an "individualized assessment," the Fourth Circuit focused on the lack of significant criminal history, young age of the defendants when the crime was committed, already-served years of incarceration, exemplary behavior, rehabilitation, and the significant

changes in sentencing law. *United States v. McCoy*, 981 F.3d 271, 274 (4th Cir. 2020).

Similarly here, Wells was only 21 when the crimes were committed and his criminal record encompassed the single offence referenced above. Moreover, the defendant has already served the vast majority of his 180-month sentence—over 140 months. Additionally, the defendant has only one disciplinary infraction during the many years he has been incarcerated. Also, the defendant has completed dozens of educational and vocational courses in addition to being a valuable resource to the prison. Accordingly, the factors which warranted compassionate release in *McCoy* are present here.

For the foregoing reasons, the court has determined that the defendant has demonstrated extraordinary and compelling reasons for his immediate release. However, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without also considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021). Thus, the court will review the applicable § 3553(a) factors.

### *Factors Under 18 U.S.C. § 3553(a)*

1. *Nature and Circumstances of the Offense.* These are summarized in the earlier portion of this order.

2. *History and Characteristics of Defendant.* The defendant was 21 years old when he committed the instant crimes. He is now approximately 35 years old and is serving his sentence at the FCI Estill with a scheduled release date of October 2023.

The PSR sets out in greater detail the defendant's characteristics, as well as his criminal history and convictions. The defendant has never married, but has one child from a committed relationship. He was one of five children raised by his parents in Lancaster, South Carolina. He reported a good childhood and good relationships with his family. He completed high school through the 11th grade. Since 2006, he owned and operated a painting business. He has also worked at a food processing plant and in the restaurant business.

### Post-Sentencing Conduct

As stated above, the defendant is a model inmate who has availed himself of numerous educational and vocational opportunities offered by the BOP.

3. *Seriousness of the Crimes*. As evidenced by the historical facts set out in the PSR involving the defendant's instant convictions, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence. However, the defendant has served a majority of his 180 months sentence and Congress has seen fit to reduce the punishment for this specific offense.

4. *Whether the Sentence Promotes Respect for the Law and Just punishment for the offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment. However, continued incarceration would promote no more respect for the law given the amount of time the defendant has already served. This is especially true when considering the great strides the defendant has made in prison towards rehabilitation.

13

5.  *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*.  The court finds that the sentence served was adequate to provide both general and specific deterrents.

6.  *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that continued incarceration is not necessary to protect the public from future crimes of the defendant.  The placement of the defendant into a "community" custody level evidences a lower threat of potential danger.

7.  *Need to Avoid Unwarranted Sentencing Disparities*.  This court must be sure that the action taken by this order will not amount to unwarranted disparity in terms of sentence of equally culpable co-defendants.  This court is not aware of any co-defendant in this case who has accumulated the record outlined in this order.  Accordingly, ordering the defendant's immediate release would not foster unwarranted disparity in criminal sentencing.

CONCLUSION

The court concludes that the defendant has demonstrated an extraordinary and compelling reason for relief under § 3582(c)(1)(A) regarding his mandatory minimum sentence under § 841(b)(1)(A).  That is, if the defendant were sentenced today, his sentence would be substantially lower as a result of the changes to the statute made by the First Step Act.  The court reaches this conclusion after carefully considering the individualized circumstances of the case, and after considering the § 3553(a) factors.

14

Accordingly, the defendant's motion is granted but for different reasons than those advanced in his original motion. His previously imposed sentence is reduced to time served; said term consists of time served to both Count 6 and Count 5. All other provisions of the amended judgment, including the terms of supervised release, remain in full force.

This order is stayed for up to 14 days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. The defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than 14 days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the court and show cause why the stay should be extended.

IT IS SO ORDERED.

March 16, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

15